UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SHAMARI SMITH | Criminal No. 3:21-cr-00029 (JBA)<br><br>April 20, 2023 |

**RULING DENYING DEFENDANT SMITH'S MOTION TO SEVER**

 This case involves a 10-count superseding indictment alleging that Francisco Roman, Jr. was kidnapped and murdered by the joint conduct of Defendants Brandon Batiste and Calvin Roberson between December 24 and December 26, 2020. (Superseding Indictment [Doc. # 39].) Co-defendant Shamari Smith was charged with obstruction of justice, in violation of 18 U.S.C. §§ 1512(c)(1) and (2). (*Id.* at 6.) Smith is not alleged have participated in the kidnapping or murder of Roman and she seeks to sever her trial from that of her co-defendants on the basis that the extensive evidence to be presented regarding the violent actions of her co-defendants creates substantial and unavoidable spillover prejudice to her and will confuse the jury. (Mot. [Doc. # 110] at 1.) The Government opposes [Doc. # 111], arguing that there is substantial overlap in the evidence relevant to the charges against all co-defendants, and that Smith does not show sufficient prejudice to justify the additional resources necessary to hold two distinct trials. For the reasons that follow, the Court DENIES Smith's Motion to Sever.

1

**I.      Factual Background**

Count Seven of the Superseding Indictment alleges that Smith "did knowingly and corruptly: (a) alter, destroy, mutilate and conceal a record, document and object, to wit: Sony PlayStation 5 console, bearing serial number AJ136550097, and jewelry and personal effects belonging to Francisco Roman, Jr., and attempt to do so, with the intent to impair their integrity and availability for use in an official proceeding, that is, a proceeding before a federal grand jury in the District of Connecticut relating to the unlawful robbery, killing and kidnapping of Francisco Roman, Jr. (the 'Kidnapping-Murder Investigation'), including the offenses charged in Counts One, Two, Three and Four of this Superseding Indictment; and (b) obstruct, influence, and impede an official proceeding, that is, the Kidnapping-Murder Investigation, and attempt to do so." (Superseding Indictment at 6.)

According to the Government, the evidence underlying Smith's obstruction of justice is as follows. Smith's relationship to the Roman kidnapping-murder investigation was discovered via Snapchat, which showed her wearing a hat and jewelry that belonged to the victim. (Opp'n at 6-11.) A search of Smith's phone found Snapchat messages from December 27, 2020, in which an unknown user told Smith that "some nigga name paco died in a burned car they saying u had his hat on in a snap and the chain and earrings u have in belonged to his Francesca they send me a video askin if I knew u I said Na but I'm tellin u bc I kno u feel me [sic]." (*Id.* at 12). Smith responded with emojis and said "if they talk. . . taking bout . . . yea idk . . . I don't even now that kid [sic]." (*Id.*) Instant messages were found on her phone, also on December 27, 2020, in which Smith told unidentified users she was selling a PlayStation 5 and needed to be brought to a jewelry store. (*Id.*) Along with the jewelry, one of the items missing from the victim's apartment was a PlayStation 5. (*Id.* at 11-12.) Records from Sony and Comcast suggested that the initial login to the missing PlayStation 5 after the victim's death was from an account in Smith's name and an address associated with her family. (*Id.* at 13.)

2

In an interview with the Government, Smith admitted having possessed the jewelry in question, and said that Roberson (with whom she had been in a relationship) gave it to her on December 24, 2020, but then took it back from her a week later when they got into a fight. (*Id.* at 12-13.) She claimed to have no knowledge of the PlayStation 5. (*Id.* at 13.)

In addition, a government cooperating witness (CW-1) told investigators that Smith told CW-1 that Roberson Facetimed Smith from the victim's car to show Smith Roman's dead body. (*Id.* at 13.)

## II.     DISCUSSION

Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, . . . or provide any other relief that justice requires." "[A] defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994). Indeed, "a defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). "The principles that guide the district court's consideration of a motion for severance usually counsel denial. Since there is a preference, in the federal system, for the joint trial of defendants indicted together, the district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993).

Smith argues that severance is required to "avoid the likely prejudicial spillover effect that will result from the introduction of evidence against the codefendants who are each charged with Kidnapping Resulting in Death[.]" (Mot. [Doc. # 110] at 1.) "The typical spillover

3

claim is that evidence admissible against only one defendant is prejudicial to all defendants and that individual trials should have been held to avoid the prejudice." *United States v. DiNome*, 954 F.2d 839, 843 (2d. Cir. 1992), *cert. denied*, 506 U.S. 830 (1992).

Smith highlights the seriousness of the violent offenses her co-defendants are charged with and maintains that "[j]ust sitting at the codefendant's [sic] table during the trial will cast Ms. Smith in a different light with the jury." (Mot. at 4.) She argues that "the complexity of the fact pattern leading up to the murder carries a substantial risk that the jury will confuse the issues in the case and that Ms. Smith will be found guilty simply because of her former dating relationship with Roberson"—an impermissible finding of guilt by association. (*Id*.) She also argues that the anticipated lengthy trial will increase the risk of jury confusion. (*Id.* at 5.)[1]

On the issue of factual complexity, the Government maintains that the facts are straightforward, not complex. (Opp'n at 16-17.) The Government argues that while Smith's offense is "distinct" from her codefendants' which "will be obvious and understandable to the jury," at the same time, "much of the evidence is inextricably intertwined" such that separate trials would be inappropriate. The Government notes that as to the Obstruction of Justice charge against Smith, it will have to prove a) that Smith "concealed, sold, disposed of the evidence;" (b) "that Smith intended to impair the object's integrity or availability for use in an official proceeding;" c) "that such a proceeding was reasonably foreseeable to her;" and d) "that Smith's acts have a relationship in time, causation, or logic with the judicial

---

[1] Smith also argues that a joint trial would be improper for "procedural reasons" because she will be forced to defend against evidence introduced against the co-defendants that would otherwise not be admissible against her. (Mot. at 5.) She does not explain the basis for this position, and to the extent such a situation does arise, careful limiting instructions may be used to cure risk of prejudice. *See Walker*, 142 F.3d at 110.

4

proceeding[]." (*Id.* at 17-18.)[2] The Government notes that it will have to offer evidence at any trial involving Smith about the details of the underlying crime in order to show it would have been foreseeable to her that an "official proceeding" may occur in the future. (*Id.* at 18.) The Government argues that details of Smith's relationship with Roberson would also come out at a separate trial to explain how Smith came to possess the items. The Government's reasoning is persuasive. Because the violent crimes allegedly committed by her co-defendants, as well as Smith's relationship with Roberson, are relevant to the case against Smith, such information would come out regardless of whether Smith is tried jointly with the co-defendants or separately, and prejudice arising from such evidence thus cannot be a basis for severance. For the same reasons, concerns about guilt by association cannot be a basis for severance, as the jury will hear evidence of Smith's relationship with Roberson and her alleged conduct with regard to the victim's possessions either way.[3]

    Finally, the parties dispute the extent of the inefficiency caused by holding separate trials. Smith claims her severed trial would be completed in roughly two days. (Mot. at 6.) The Government, while conceding that the severed trial would be shorter, argues two days would be insufficient, as it would still need to prove "Roberson's role in the kidnapping and murder, the details of the underlying crimes, the connection between Roman and the evidence destroyed, concealed, or sold, Smith's relationship to Roberson, and the subsequent investigation by the FBI looking for the property. Multiple witnesses would have to testify in

---

[2] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

[3] The Government goes further, and argues that "[i]n a severed trial, it will likely be uncontested that Roberson committed the murder so the transference of guilty [sic] may be hypothetically greater. At a joint trial, Roberson will be professing his innocence, and challenging the government's evidence that he kidnapped and murdered Roman." (Opp'n at 19.)

two trials, including friends and family members of the victim, a government cooperating witness, and numerous law enforcement witnesses." (Opp'n at 19-20.) Regardless of the precise length of the severed trial, there can be no doubt that an additional trial produces significant inefficiencies, given the need to present a significant amount of overlapping evidence.

Smith's concerns are primarily that a joint trial will prejudice the jury against her by associating her with the violent crimes of her co-defendants. But as the Government has shown, the case against Smith will require evidence related to the underlying violent crimes at issue, as well as Smith's connections to those crimes. Thus, it appears unlikely that a joint trial creates any significant increase in prejudice. Nor is it clear why a joint trial is likely to confuse the jury, given the distinct nature of the charges against Smith as compared to her co-defendants. Smith "carries a heavy burden of showing that joinder will result in substantial prejudice." *Amato*, 15 F.3d at 237. That burden has not been met. As such, this Court does not find Smith's trial should be severed from that of her co-defendants.

### III. Conclusion

For the foregoing reasons, Defendant Smith's Motion to Sever is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of April, 2023